Sterling E. CORDY, Plaintiff,

v.

The SHERWIN WILLIAMS COMPANY, Defendant; Third–Party Plaintiff,

v.

The COUNTY OF CAMDEN, Third–Party Defendant.

Civil Action No. 94–184 (JBS).

United States District Court, D. New Jersey.

March 31, 1997.

William J. Cook, Brown & Connery, Westmont, NJ, for Plaintiff.

William J. DeSantis, Kenney & Kearney, Cherry Hill, NJ, for Defendant/Third–Party Plaintiff.

M. Lou Garty, Assistant County Counsel, Camden, NJ, for Third–Party Defendant.

*OPINION*

SIMANDLE, District Judge.

This is a diversity action in which plaintiff, Sterling E. Cordy, alleges that he suffered severe personal injuries in a bicycle-riding accident allegedly caused by defendant's negligent maintenance of its abandoned railroad spur track where it crosses a county road. Presently before the court are a variety of summary judgment motions brought by the parties in this case. Although these motions raise a number of legal and factual issues, probably the most interesting issue raised is whether the fact that an injured adult bicyclist was not wearing a helmet at the time of his bicycle-riding accident may be offered as evidence that the bicyclist failed to mitigate his damages. Second, the Opinion will explore the statutory immunity of a public entity that failed to maintain roadway pavement so that the road would be precisely level with the railroad tracks that cross it. Third, the Opinion will discuss the duties of the owner of an abandoned rail spur owed to the users of the public road which the tracks cross. The court's resolution of these and the other issues implicated by these summary judgment motions follows.

*Background*

On the morning of August 30, 1991, plaintiff, a 46–year–old male, was severely injured while riding his bicycle in Lindenwold, New Jersey. The accident occurred while plaintiff was riding westbound along Egg Harbor Road and attempted to ride over a set of railroad tracks that intersect with Egg Harbor Road in a perpendicular manner. The railroad tracks were slightly elevated above the adjoining road surface. (Pl.Ex. 29, 35). Thus, when the front tire of plaintiff's bicycle made contact with the elevated, eastern-most railroad track, the track allegedly stopped the bicycle's forward momentum and plaintiff was launched head-first over the handlebars and on to the street pavement. (Pl.Ex. 34). Plaintiff alleges that he suffered a number of severe injuries as a result of this accident, including spinal injuries that have caused paralysis.

The railroad tracks in question were owned by defendant The Sherwin Williams Company ("Sherwin") at the time of the accident. (Pl.Ex. 9, p. 3). Sherwin had acquired the railroad line in 1930, when it merged with Lucas Paints, the former owner of the line. (Pl.Ex. 1, pp. 18–19). The railroad line is known as a "spur," as it connects the Sherwin plant in Gibbsboro, New Jersey to the main rail line in Lindenwold. (*Id.*). The spur crosses Egg Harbor Road near the intersection of the spur and the main line. During the 1970's, Sherwin occasionally used the spur to transport materials to its plant. Although Sherwin has never sold the railroad line to any other party, it closed its Gibbsboro plant in 1978 and has not used the tracks since that time. (Pl.Ex. 9, p. 3).

Plaintiff filed his complaint against Sherwin in New Jersey Superior Court on January 29, 1993. Sherwin subsequently removed the case to this court. Shortly thereafter, Sherwin filed a third-party complaint against the County of Camden (the "County").

Plaintiff's complaint alleges that Sherwin's negligent maintenance of its railroad tracks proximately caused plaintiff's bicycle accident and injuries. Sherwin responds by contending that it was plaintiff's own negligence that brought about his biking accident. In addition, in its third-party complaint, Sherwin contends that because plaintiff's accident took place on a county road, the County is the party responsible for any dangerous condition arising from the elevated position of the railroad tracks in question. Sherwin argues that the tracks are "elevated" only because the adjoining road surface has worn away, and not because of any improper maintenance of the tracks themselves.

*Discussion*

I. *Summary Judgment Standard*

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). A dispute is "genuine" if "the

evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080–81 (3d Cir.1996); *Kowalski v. L & F Prods.*, 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511; *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 329–30 (3d Cir. 1995) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510) ("[T]he nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial.").

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Jalil v. Avdel Corp.*, 873 F.2d 701, 706 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). However,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden if proof at trial. In such a situation, there can be 'no genuine issue as to

any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders other facts immaterial.

*Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552. In such situations, "the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554; *Brewer*, 72 F.3d at 329–330 (citing *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53) ("When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial.").

The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed.R.Civ.P. 56(e). They must do more than rely only "upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985) (citation omitted); *see Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Celotex*, 477 U.S. at 324–25, 106 S.Ct. at 2553–54. Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

## II. *The County's Motion for Summary Judgment on the Third–Party Complaint*

The first summary judgment motion filed in this case was that of the third-party defendant, the County of Camden. In support of its motion for summary judgment, the County makes a number of arguments, which can be grouped into three general contentions:

1) because the County did not own or control the railroad tracks that allegedly caused plaintiff's injuries, the County may not be held responsible for those injuries; 2) pursuant to the terms of the New Jersey Tort Claims Act, the County may not be held liable for plaintiff's damages; and 3) this is not a case in which indemnification or contribution would be appropriate, and thus the third-party complaint should be dismissed. As explained below, the court will grant summary judgment to the County on the basis of the County's second argument, which is based on the New Jersey Tort Claims Act. As a result, the court need not reach the County's remaining contentions.

The New Jersey Tort Claims Act, N.J.S.A. § 59:1-1 *et seq.* (the "Act"), provides that public entities such as the County "shall only be liable for their negligence within the limitations of th[e Act]." N.J.S.A. § 59:1-2. The Act strictly delineates the conditions under which a public entity may be found liable for negligence, and represents New Jersey's "general rule favoring the immunity of public entities." *Pico v. State,* 116 N.J. 55, 59, 560 A.2d 1193 (1989). Under the regime established by the Act, "immunity is the rule, and liability the exception" for public entities. *Bombace v. City of Newark,* 125 N.J. 361, 372, 593 A.2d 335 (1991).

Among other limitations, the Act provides that a public entity is liable for an injury caused by a condition of the public entity's property only if it is established that "the property was in a dangerous condition at the time of the [plaintiff's] injury, that the injury was proximately caused by the dangerous condition, [and] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred." N.J.S.A. § 59:4-2 (emphasis added). The Act defines "dangerous condition" as "a *condition of property that creates a substantial risk of injury* when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. § 59:4-1(a) (emphasis added). The Act also notes that "[n]othing in [the Act] shall be construed to impose liability upon a public entity for a dangerous condition ... if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." N.J.S.A. § 59:4-2.

In certain cases, this question of "dangerous condition" must be resolved by the court as a matter of law, in order to ensure that the "legislatively-decreed restrictive approach to liability" is enforced. *Polyard v. Terry,* 160 *N.J.Super.* 497, 508, 390 A.2d 653 (App.Div.1978), *aff'd o.b.,* 79 N.J. 547, 401 A.2d 532 (1979). The pertinent inquiry is whether reasonable minds could differ as to whether the condition was indeed "dangerous" as defined by the Act. *Id.* at 510, 390 A.2d 653.

In this case, the court finds that a reasonable juror could not conclude that the condition in Egg Harbor Road that allegedly caused plaintiff's injuries was a "dangerous condition." The allegation in this case is that plaintiff's injuries resulted when plaintiff's front bicycle tire struck the eastern-most rail of the Gibbsboro spur as it crosses Egg Harbor Road. The rail allegedly created a dangerous condition because it was elevated over the roadway, thereby creating an obstacle for passers-by. Defendant argues that this elevation was caused by wear and tear of Egg Harbor Road itself.

The record indicates, however, that the rail was raised above the surrounding roadway only by a very slight amount. Specifically, as all parties apparently agree, at the point at which plaintiff's tire made contact with the rail, the rail was raised between only 5/8 of an inch and 7/8 of an inch from the roadway. (County Ex. JJ; Df. br. at 15; *see* County Ex. R). This slightly elevated train track, less than one inch high when compared with the adjacent roadway and in plain view of the users of the roadway, could not rationally be found to have created a substantial risk of injury when used in a foreseeable manner with due care. *See* N.J.S.A. § 59:4-1(a). Indeed, such minor bumps and dips in the roadway are commonplace in the roads of this area. *See, e.g., Polyard,* 160 N.J.Super. at 509, 390 A.2d 653. The court therefore declines to hold that the County's failure to fill in this small gap between train track and

roadway could be viewed as "palpably unreasonable." N.J.S.A. § 59:4–2.

If the court were to endorse the argument that the slightly elevated rail of the Gibbsboro spur constituted a dangerous condition for purposes of the Act and that the County's failure to level the roadway was palpably unreasonable, the court would, in effect, be imposing on the County an unfairly onerous burden to keep county roadways free of any imperfections, regardless of their magnitude. Such a result would run contrary to the purposes of the Act, which was designed to enact into the law the proposition that "government should not have the duty to do everything that might be done." N.J.S.A. 59:1–2; *see also* Official Comment to N.J.S.A. § 59:4–2 ("This section recognizes the difficulties inherent in a public entity's responsibility for maintaining its vast amounts of public property.").

■ In the context of roadway maintenance, the Act's restrictive policy on public liability means that "not every defect in a highway, even if caused by negligent maintenance, is actionable." *Polyard,* 160 N.J.Super. at 508, 390 A.2d 653. For example, in *Polyard,* the plaintiff had argued that a 3/8 of an inch difference in height between a bridge surface and the adjoining roadway was a "dangerous condition" that had caused a automobile accident involving the plaintiff. The court rejected the plaintiff's argument, finding that the 3/8 of an inch differential could not reasonably be found to create a substantial risk to public safety. The court explained that "[t]ravelers on highways must expect some declivities and some areas of imperfect surfaces." *Id.* at 509, 390 A.2d 653. As an example of a case where the plaintiff had properly alleged a "dangerous condition," the court pointed to *Hammond v. Monmouth County,* 117 N.J.L. 11, 186 A. 452 (Sup.1936), in which the plaintiff, "while driving his truck, without warning encountered an unprotected excavation in the highway, which permitted the rear wheels of the truck to drop into the excavation and to overturn the vehicle." *Polyard,* 160 N.J.Super. at 509, 390 A.2d 653.

The court has reviewed a picture of the accident scene (Df.Ex. F) in this case and the expert testimony found in the record, and concluded that this case is much more closely akin to *Polyard* than *Hammond.* Even assuming that the County had a duty to plaintiff arising from the fact that plaintiff's accident occurred on a county road, the Act simply does not provide for public liability stemming from small road imperfections such as that involved here. Upon these undisputed facts, no reasonable juror could conclude that the existence of the railroad track crossing the county road on an essentially level plane within 7/8 of an inch of the elevation of the road surface, presents a "dangerous condition," and even if one assumes for the sake of argument that the County was neglectful in not paving the roadway surface to the exact same height of the tracks, that omission could not be found to be palpably unreasonable. The County is not an appropriate defendant in this case and is entitled to summary judgment because it is immune from liability for negligence that does not rise to the level of palpably unreasonable conduct creating a "dangerous condition."

### III. *Defendant's Cross–Motion for Summary Judgment Against the County*

In responding to the County's summary judgment motion, defendant Sherwin has cross-moved for partial summary judgment. Specifically, defendant seeks a court order "declaring that plaintiff's accident on August 31, 1991, occurred on public property that was controlled by the County of Camden." (Df. Not. of Mot.). As discussed in the previous section of this Opinion, however, the court has concluded that the County may not be held liable for plaintiff's injuries under the New Jersey Tort Claims Act. Because the County will be dismissed from this case and because even if the County "controlled" the site of plaintiff's accident it could not lawfully be found liable in this case, defendant Sherwin's cross-motion for summary judgment on the third-party complaint will be dismissed as moot.

### IV. *Plaintiff's Motion for Partial Summary Judgment*

In addition to the motions for judgment on the third-party complaint, the parties in this

case have also sought summary judgment on issues pertaining to plaintiff's case against defendant Sherwin. The court will now proceed to address the summary judgment motion brought by plaintiff himself.

Plaintiff has moved for partial summary judgment on various issues in this case. First, he seeks a court order declaring that defendant Sherwin was negligent and that defendant's negligence was a proximate cause of plaintiff's injuries. Plaintiff also asks the court to dismiss defendant's proffered affirmative defenses of assumption of risk, contributory negligence, and comparative negligence.

### A. Plaintiff's Negligence and Causation Arguments

■ Plaintiff contends that "as a matter of law, Sherwin–Williams was negligent in failing to properly repair and maintain its Egg Harbor Road track crossing where this accident occurred." (Pl. Br. at 41). The court notes initially that the New Jersey courts have demonstrated a strong reluctance to decide issues of common law negligence as a matter of law. *See, e.g., Brett v. Great Am. Recreation, Inc.,* 144 N.J. 479, 505–08, 677 A.2d 705 (1996); *Harpell v. Public Serv. Coordinated Transp.,* 20 *N.J.* 309, 317–18, 120 A.2d 43 (1956). It is against this legal backdrop that the court attempts to resolve plaintiff's motion as it would be resolved by the New Jersey Supreme Court. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967).

■ As discussed previously, the section of the Gibbsboro tracks on which plaintiff was injured was elevated less than one inch from the surrounding roadway. In fact, two experts in this case have analyzed the accident scene and concluded that the condition of the tracks and roadway presented little, if any, danger to a bicyclist riding along Egg Harbor Road. (Pl.Ex. 35, p. 45). As one expert explained, "A bicyclist encounters, and expects to encounter, numerous bumps as bad or worse than the tracks in question. Such bumps normally do not cause any problem with control of the bicycle." (Pl.Ex. 35). On the basis of evidence such as this, the court easily concludes that a rational juror could find that defendant did not act unreasonably in not ensuring that the rail track and roadway were on an exactly level plane. The court has reviewed the evidentiary items put forth by plaintiff on this motion, such as the evidence that defendant violated railroad industry standards by not ensuring that the top of the rails and the surrounding highway surface were "in the same plane." (Pl.Ex. 30). Such industry standards are not dispositive of negligence issues, however, *see McComish v. DeSoi,* 42 N.J. 274, 282, 200 A.2d 116 (1964), and a juror could properly conclude that the separation between rail and road in this case was so de minimis as to render defendant's failure to take corrective action reasonable. Plaintiff's motion for summary judgment on this issue will be denied.

Even if plaintiff could establish as matter of law that defendant breached its duty of care to plaintiff, plaintiff has not adequately demonstrated for purposes of this summary judgment motion, that any such breach must have been the proximate cause of plaintiff's injuries. Indeed, two expert witnesses retained by defendant have stated in their expert reports that plaintiff's accident was proximately caused by a defect in plaintiff's bicycle, and not by the bump in Egg Harbor Road. (Pl.Ex. 35, 45). As one of the experts explains:

4) The railroad tracks which Mr. Cordy attempted to cross could not stop the bicycle abruptly. This is simply physically impossible. . . .

. . . . .

5) Nonetheless, Mr. Cordy's bicycle did stop abruptly, throwing him to the road surface and causing his injuries.

. . . . .

6) Mr. Cordy's bicycle stopped abruptly because the front wheel separated from the front fork. . . .

. . . . .

7) The front wheel separated from the front fork due to the failure of the front

hub's quick-release mechanism to hold the wheel in place. . . .

. . . . .

10) *The disengagement of the front wheel was the proximate cause of the accident. If the front wheel had been properly secured, Mr. Cordy would have crossed the railroad tracks with no problem,* as he expected to and as he had in fact done in the past.

(Pl.Ex. 35 (emphasis added)). These and other evidentiary submissions are easily sufficient to create a genuine issue of material fact concerning whether defendant's alleged breach of duty proximately caused plaintiff's injuries. Even if a reasonable juror found that the Gibbsboro tracks were a "but for" cause of plaintiff's accident, the juror could reasonably conclude that a problem with plaintiff's bicycle was a superseding, intervening cause. *See Rappaport v. Nichols,* 31 N.J. 188, 203, 156 A.2d 1 (1959). These genuine disputes of material fact can be resolved only by the jury. Plaintiff is therefore not entitled to judgment as a matter of law on the causation issue.

Plaintiff responds to this evidence by arguing that defendant has been negligent per se by violating N.J.S.A. § 48:12–58.1. That statute provides:

> Whenever a railroad company has discontinued . . . all traffic on any line . . . and has abandoned . . . the use of such line and the grade crossings thereon, said company shall notify the Board of Public Utility Commissioners and the Director of the Division of Motor Vehicles of its action. The Board of Public Utility Commissioners shall order . . . the installation . . . of a sign of such standard and design as shall be approved by the board, with the inscription "Abandoned Grade Crossing." When the railroad track has been removed or paved over at an abandoned grade crossing, no sign shall be required.

The court agrees with plaintiff that defendant violated this statute by abandoning its Gibbsboro rail line and not notifying the proper state officials of that abandonment.[1]

1. Defendant conceded as much at oral argument.

The court disagrees with plaintiff, however, as to the effect of that violation in this case.

First, plaintiff's attempt to use the abandoned grade crossing statute to establish negligence per se fails because plaintiff is not a member of the class of persons who the statute was designed to protect. The apparent purpose behind N.J.S.A. § 48:12–58.1 was to promote a steady and uninterrupted flow of vehicular traffic. The New Jersey Legislature apparently drafted the statute because of its concern that bus drivers, who are instructed to stop at all railroad crossings for safety reasons, would be compelled to stop needlessly when encountering a train line that was no longer active. N.J.S.A. § 48:12–58.1 thus calls for the posting of certain signs at abandoned crossings, while N.J.S.A. 39:4–128(a), which in relevant part was enacted along with N.J.S.A. § 48:12–58.1, provides that buses are not required to stop at an abandoned railroad crossing so long as the sign required by N.J.S.A. § 48:12–58.1 has been posted. Because plaintiff has not demonstrated that these provisions embody any legislative declaration concerning the conduct needed to protect bicyclists or pedestrians at railroad crossings, plaintiff is unable to rely on N.J.S.A. § 48:12–58.1 in bringing his negligence cause of action.

In addition, plaintiff has not established any causal relationship between plaintiff's injuries and defendant's violation of this statute. Defendant could have brought itself into compliance with the statute merely by notifying certain state agencies of the abandoned rail line. The agencies, in turn, would have erected an abandoned railroad crossing sign. Plaintiff has not explained how such a sign would have altered his behavior or led him to avoid the tragic accident that occurred as he passed over the Gibbsboro tracks. Indeed, plaintiff testified during his deposition that prior to his accident he was already aware that the rail line in question was no longer in use. (Df.Ex. F). Plaintiff's N.J.S.A. § 48:12–58.1 argument is without merit.

### B. *Plaintiff's Arguments Concerning Sherwin's Affirmative Defenses*

■ Plaintiff also moves for summary judgment on the defenses of assumption of risk, contributory negligence, and comparative negligence that have been put forth by defendant. Assumption of risk and contributory negligence are no longer valid defenses under New Jersey law, and thus those defenses will be dismissed. *See* N.J.S.A. § 2A:15–5.1; *McGrath v. American Cyanamid Co.*, 41 N.J. 272, 276, 196 A.2d 238 (1963). Comparative negligence potentially is, however, a valid defense under the law of New Jersey. See N.J.S.A. § 2A:15–5.2. Plaintiff's motion for summary judgment on Sherwin's comparative negligence defense thus requires the court to analyze each of the specific comparative negligence defenses that have been asserted to determine whether such defenses are consistent with New Jersey law and supported by credible evidence in this case.

The first of Sherwin's comparative negligence defenses is that plaintiff was negligent in not wearing a bicycle helmet at the time of his accident. In its brief responding to plaintiff's summary judgment motion, however, Sherwin concedes that plaintiff's failure to wear a helmet is not relevant to the issue of plaintiff's comparative fault in this case. (Df. Br. at 30).

■ The issue that remains in dispute is whether Sherwin may argue to the jury that any damages awarded to plaintiff should be reduced because of plaintiff's failure to wear a helmet and thereby mitigate his damages. In answering this question, the court looks initially to pertinent decisions of the New Jersey state courts. It appears, however, that the New Jersey courts have yet to address the bicycle helmet defense issue. Indeed, the issue has received scant attention in courts across the country. Defendant has not cited, and the court's research has not uncovered, even one case that holds that failure to wear a bicycle helmet is relevant to the determination of an injured bicyclist's damages. In the one case that is specifically on point, the Montana Supreme Court summarily rejected a defendant's attempt to raise the bicycle helmet issue before a jury in a bicycling injury case. *See Walden v. State,* 250 Mont. 132, 818 P.2d 1190, 1197 (1991). The court relied primarily on the fact that Montana law did not require bicyclists to wear helmets. *See id.*

In the absence of judicial authority indicating that the failure to wear a bicycle helmet is relevant to the question of an injured bicyclist's damages, the court looks to pertinent legislative pronouncements for guidance. At the time of plaintiff's accident, there was no New Jersey law requiring bicyclists to wear helmets while riding. Since the accident, the New Jersey Legislature has passed such a statute, but it applies only to persons under the age of 14.[2] *See* N.J.S.A. 39:4–10.1. Moreover, the decision to apply the helmet requirement only to young children was apparently significant to the statute's successful enactment. As originally drafted, the bill would have required bicyclists of all ages to wear helmets, but the bill was subsequently amended so that it would not apply to older children or adults. (Pl.Ex. 46).

States other than New Jersey that have enacted legislation in this area have adopted statutory schemes similar to that of New Jersey. In fact, defendant has not taken issue with plaintiff's research that revealed that there is not one state that requires adult bicycle riders to wear helmets.

Under such circumstances, this court declines to permit defendant to argue to the jury that plaintiff's failure to wear a bicycle helmet should affect any damage award received by plaintiff in this case. There is nothing in either federal or state law that would have alerted a reasonable person in plaintiff's position that his legal rights could be prejudiced by his decision not to wear a bicycle helmet. Nothing in the law provided notice to plaintiff that he was legally expected to wear a helmet or that failure to wear a helmet could be considered legally unreasonable. The court will therefore not contravene fundamental notions of fairness by announcing defendant's proposed new rule of law at the expense of this severely injured

---

**2.** As noted previously, the plaintiff in this case is 46 years old.

plaintiff who had no reason to predict the promulgation of such a new rule. *Cf. Warfel v. Cheney,* 157 Ariz. 424, 758 P.2d 1326, 1333 (App.1988) (ruling that injured motorcyclist's failure to wear helmet was relevant to issue of damages, but applying that ruling prospectively only).

Defendant responds to these equitable arguments by contending that applying its proposed helmet rule in this case would merely be an extension of prior decisions rendered by New Jersey courts concerning the legal consequences of not wearing a seat belt in a car. This court, however, is not persuaded by defendant's attempted analogy. Concededly, the New Jersey Supreme Court has held that jurors may "determine whether an injured party's nonuse of a seat belt should serve to reduce that party's recovery." *Waterson v. General Motors Corp.,* 111 *N.J.* 238, 266, 544 A.2d 357 (1988). At the time of the *Waterson* decision, however, New Jersey law required motorists to wear seat belts while driving. *See* N.J.S.A. § 39:3–76.2f. As discussed previously, no law required plaintiff Cordy to wear a bicycle helmet. The *Waterson* court also noted that most states require front-seat passengers to wear seat belts. No state, however, has enacted a helmet requirement for adult bicyclists, which perhaps represents a recognition that, in general, riding a bicycle is not as dangerous as driving in a car. Lastly, federal law requires that all automobiles come equipped with seat belts. *See Waterson,* 111 N.J. at 260, 544 A.2d 357. In contrast, New Jersey law does not require that helmets be sold along with bicycles. For these sorts of reasons, the seat belt analogy is not a very useful one in this case.

Defendant also cites a few state court decisions from around the country that hold that an injured motorcyclist's failure to wear a helmet is admissible on the issue of damages. *See, e.g., Warfel v. Cheney,* 157 Ariz. 424, 758 P.2d 1326 (App.1988); *Halvorson v. Voeller,* 336 N.W.2d 118 (N.D.1983). No New Jersey case, however, has so held. In addition, like the seat belt analogy, the motorcycle helmet analogy is of questionable relevance here. It is obvious that riding a motorcycle is far more dangerous than riding a bicycle. Moreover, New Jersey statutory law re-

quires all motorcycle riders to wear proper helmets. *See* N.J.S.A. 39:3–76.7. Thus, while plaintiff Cordy had not been put on notice that the law would expect him to wear a helmet while on his bicycle, motorcyclists would have reason to conclude that there could be legal consequences resulting from a failure to wear proper headgear while driving a motorcycle. For these reasons, the motorcycle helmet cases cited by defendant are not dispositive here. The court will grant summary judgment to plaintiff on the bicycle helmet issue, because we hold that an adult bicyclist's failure to wear a helmet is not a failure to mitigate damages.

■ Plaintiff is not entitled to summary judgment, however, on defendant Sherwin's remaining comparative negligence defenses. For example, defendant contends that plaintiff was comparatively negligent in not avoiding the railroad tracks in Egg Harbor Road and not slowing down while proceeding over the tracks. This argument is supported by certain portions of plaintiff's own deposition testimony (Df.Ex. F), and is an appropriate issue for jury resolution.

■ Similarly, defendant's bicycle expert has stated that plaintiff's biking accident was caused by the failure of the front wheel's "quick release mechanism," which purportedly led to the disengagement of the front wheel and the subsequent sudden halt of plaintiff's bicycle. (Pl.Ex. 35). Plaintiff admitted during his deposition that he had not adjusted the quick release mechanism for years and that he had never checked the tension on that mechanism. (Df.Ex. F). It will be the province of the jury in this case to determine whether plaintiff was negligent in the manner in which he maintained and monitored the quick release mechanism.

## V. *Defendant's Cross–Motion for Summary Judgment on Plaintiff's Complaint*

Defendant Sherwin has cross-moved for summary judgment on plaintiff's complaint. Defendant argues that it had no duty to plaintiff because it does not own the land on which plaintiff was injured and because the County is the party responsible for the maintenance of all Camden County roads. Plaintiff counters that defendant did indeed own

the land on which plaintiff was injured, as well as the train tracks themselves.

■ The parties have briefed this issue extensively, but the court concludes that defendant's motion for judgment as a matter of law can be denied without prolonged discussion. The record contains conflicting evidence on the specific question of who owns the land underneath the tracks on which plaintiff was injured.[3] (*See, e.g.,* Hayes Certif. Ex. A; Pl.Ex. 13; Pl.Ex. 12). With respect to the tracks themselves, moreover, it is undisputed that defendant Sherwin was the owner. Railway industry standards instruct railroad owners that "[w]here crossings involve two or more tracks, the top of the rails for all tracks shall be brought to the same plane where practicable. *The surface of the highway shall be in the same plane as the top of rails for a distance of 2 ft. outside of rails . . . .*" (Pl.Ex. 30 (emphasis added)). Indeed, the record reveals that for many years defendant did considerable maintenance work on the tracks in question and the surrounding roadway. For example, in 1974, defendant hired a construction company to remove and replace the "blacktop at track crossing and Egg Harbor Road." (Pl.Ex. 16). Defendant had a continuing duty to maintain its property in reasonably safe condition, and cannot walk away from that duty merely because it was no longer using the Gibbsboro spur. Defendant also has had the opportunity to remove its tracks over the years, so that the inevitable deterioration of their abandoned condition would not rise to the level of actionable negligence. Because a jury could properly conclude that defendant's negligent upkeep of its property caused plaintiff's injuries, defendant's motion for summary judgment will be denied.

### Conclusion

The court will grant summary judgment to the County on the grounds that the New Jersey Tort Claims Act does not permit the County to be held liable for plaintiff's injuries. Because the County is dismissed from this case, the court need not reach Sherwin's cross-motion for partial summary judgment,

in which Sherwin seeks a judicial declaration that the County owed a duty of care to plaintiff Cordy.

With respect to the motions relating to plaintiff's complaint against defendant Sherwin, the court will deny plaintiff summary judgment on the issues of negligence and causation, which are found to be the province of the jury. Furthermore, the court will order that Sherwin is permitted to argue that plaintiff was comparatively negligent in this case in the manner in which he maintained his bicycle and in the manner in which he rode through the Egg Harbor Road intersection at the time of his biking accident. Sherwin will not, however, be permitted to argue to the jury that any damage award received by plaintiff should be reduced because of plaintiff's failure to mitigate his injuries by wearing a bicycle helmet. Lastly, Sherwin's cross-motion for summary judgment on plaintiff's complaint will be denied, because, contrary to Sherwin's arguments, Sherwin did owe a duty of reasonable care to plaintiff.

The accompanying Order is entered.

### *ORDER*

This matter having come before the court upon various summary judgment motions brought by each of the three parties in this case; and the court having considered the submissions of the parties; and the court having heard oral argument on July 19, 1996; and for the reasons stated in the Opinion of today's date;

IT IS this 31st day of March 1997 hereby

ORDERED that the County of Camden's motion for summary judgment on the third-party complaint is hereby *GRANTED;* and it is

FURTHER ORDERED that defendant The Sherwin Williams Company's cross-motion for partial summary judgment on the third-party complaint is hereby *DISMISSED* as moot; and it is

FURTHER ORDERED that plaintiff's motion for summary judgment is hereby *GRANTED IN PART AND DENIED IN*

---

**3.** Indeed, in defendant's Local Rule 12G Statement of Material Facts, defendant itself states

that this is an issue as to which a genuine issue of material fact exists.

*PART,* as follows: plaintiff's motion is hereby *GRANTED* insofar as the court hereby dismisses the defenses in this case of contributory negligence and assumption of risk; plaintiff's motion is also hereby *GRANTED* insofar as the court hereby declares that the fact that plaintiff was not wearing a bicycle helmet at the time of his biking accident will not be admissible at trial on the issues of comparative fault or damages; plaintiff's motion for summary judgment is hereby *DENIED* insofar as it seeks dismissal of the remaining comparative negligence defenses in this case; plaintiff's motion is also hereby *DENIED* insofar as it seeks summary judgment on the issues of defendant's breach of duty in this case and whether any such breach proximately caused plaintiff's injuries; and it is

FURTHER ORDERED that defendant's motion for summary judgment on plaintiff's complaint is hereby *DENIED.*