

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-3-2007

# Reese v. Finley

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4657

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Reese v. Finley" (2007). *2007 Decisions*. Paper 1816.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1816

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――

No. 05-4657

―――

DIANE L. REESE and DONALD REESE

Appellants

v.

ROBERT FINLEY and CITY OF OCEAN CITY

―――

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-04029)
District Judge: Honorable Jerome B. Simandle

―――

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 13, 2006

Before: FUENTES and VAN ANTWERPEN, <u>Circuit Judges</u>, and PADOVA,*
<u>District Judge</u>.

(Filed:  January 3, 2007)

―――

OPINION OF THE COURT

―――

―――――――
*The Honorable John R. Padova, District Judge of the Eastern District of Pennsylvania,
sitting by designation.

PADOVA, District Judge.

Appellants Diane L. Reese and Donald Reese appeal the District Court's order granting summary judgment in favor of the City of Ocean City in a tort claim brought by them pursuant to the New Jersey Tort Claims Act as a result of injuries sustained by Mrs. Reese in an accident on Ocean City's Boardwalk.

Appellants raise three issues on appeal. First, they contend that the District Court erred by concluding, as a matter of law, that the width of the Ocean City Boardwalk was not a "dangerous condition of property" under the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1, et seq. Second, they argue that the District Court erred by concluding, as a matter of law, that Ocean City did not act in a "palpably unreasonable" manner in its conduct regarding recreational bicycle use on its Boardwalk. Third, they contend that the District Court erred in failing to consider their argument that Ocean City was not entitled to design immunity under the Act.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We will affirm.

## I. Factual Background

Because we write solely for the parties, we set forth only those facts necessary to our analysis.

On Friday, July 19, 2002 at approximately 7:30 a.m., Mrs. Reese, a 58-year-old school teacher, was walking on the Boardwalk between 18th and 19th Streets in Ocean City, New Jersey, proceeding northbound with her sister-in-law to her right. At the same

time, Robert Finley was riding a bicycle on the Boardwalk between 18th and 19th Streets traveling northbound. When Finley first saw Mrs. Reese, he was approximately twenty feet behind her, and there were no other individuals between them. As Finley approached Mrs. Reese, he attempted to pass her on her left. However, according to Finley, four teenagers, whom he called "hot-doggers," traveling southbound swerved out one by one, consuming the space that he needed to make his pass, and forcing him to veer his bicycle into Mrs. Reese, striking her from behind. Mrs. Reese was knocked to the ground. She struck her head on the Boardwalk, and was rendered unconscious.

The parties presented conflicting evidence regarding whether the Boardwalk was crowded at the time of the accident, and whether the accident would have occurred if the Boardwalk were wider. Finley testified that there were bikers, joggers, and pedestrians all sharing the same space on the Boardwalk and that the Boardwalk was "kind of a free for all." The police officer who arrived at the scene of the accident noted in his report that traffic was "extremely heavy" at the time of the incident. Ocean City, however, contends that there was light traffic on the Boardwalk and points to Finley's testimony in which he states that, at the moment he made his decision to pass Mrs. Reese, the distance between her and the next group of individuals traveling southbound on the Boardwalk was twenty feet.

At the location of the collision between Finley and Mrs. Reese, the Boardwalk is approximately 14.5 feet wide. Finley testified that the width of the Boardwalk contributed to the cause of the accident. However, Ocean City contends that Finley

repeatedly testified that there was sufficient room and time for him to pass Mrs. Reese safely. For example, Finley testified: "It looked like [passing Reese and her companion] was clearly going to be easy," "I clearly had enough time to pass," and "I still had room to pass." Finley also testified that there was sufficient space for Mrs. Reese and her companion to walk closer to the Boardwalk railing on the ocean side to allow him to pass without incident, and that the bikers traveling southbound caused him to divert his path into Mrs. Reese. Appellants presented a report from Leonard Lucenko, Ph.D., a certified expert in recreational safety and engineering, who concluded that the Boardwalk is too narrow in the area between 14th and 23rd Streets to accommodate all the traffic permitted on the Boardwalk and that this narrowness creates a dangerous and unsafe condition for those using the Boardwalk. Finally, Appellants assert that officials from Ocean City were aware of the hazards and dangers created by the congestion and operation of bicycles on the narrow portion of the Boardwalk prior to Mrs. Reese's injury in July 2002. Ocean City, however, asserts that because the Boardwalk plays a crucial role in the economic well being of the city, it has taken steps to address increasing congestion on the Boardwalk and accidents which may occur as a result of this congestion. These actions include: limiting the hours bicycle use is permitted on the Boardwalk, limiting the location of where surrey carts can go, and widening the Boardwalk at certain locations.

## II. Standard of Review

Our review of the District Court's grant of summary judgment is plenary. <u>See</u> <u>Witkowski v. Welch</u>, 173 F.3d 192, 198 (3d Cir. 1999). Consequently, we assess the record using the same summary judgment standard that guides the district courts. <u>See</u> <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 278 (3d Cir. 2000). To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the evidence, we "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." <u>Bartnicki v. Vopper</u>, 200 F.3d 109, 114 (3d Cir. 1999).

## III. Analysis

Appellants argue that the District Court erred in concluding that the width of the Boardwalk did not create a dangerous condition of public property under the New Jersey Tort Claims Act (the "Act") because it failed to consider the permitted conduct and the objectively foreseeable behavior of persons using the Boardwalk in combination with its width.

The Act provides that public entities "shall only be liable for their negligence within the limitations of the Act." N.J. Stat. Ann. § 59:1-2. Under the Act, immunity from tort liability is the general rule and liability is the exception. <u>Bombace v. City of</u> <u>Newark</u>, 593 A.2d 335, 341 (N.J. 1991). One such exception is provided by § 59:4-2, which states:

A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

N.J. Stat. Ann. § 59:4-2. "Dangerous condition" is defined as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." Id. § 59:4-1(a). "In certain cases, this question of 'dangerous condition' must be resolved by the court as a matter of law, in order to ensure that the 'legislatively-decreed restrictive approach to liability' is enforced." Cordy v. Sherwin Williams Co., 975 F. Supp. 639, 643 (D.N.J. 1997) (quoting Polyard v. Terry, 390 A.2d 653, 658 (N.J. Super. Ct. App. Div. 1978), aff'd o.b., 401 A.2d 532 (N.J. 1979)).

Appellants contend that under New Jersey law, the district court should have considered, along with the width of the Boardwalk, factors such as the conduct permitted on the Boardwalk, the absence of lanes to separate bikers from pedestrians, lack of

warnings to use extra caution in the narrow portion of the Boardwalk, and the failure to monitor conduct of users of the Boardwalk to determine whether the Boardwalk was a dangerous condition. Appellants rely on language in Levin v. County of Salem, 626 A.2d 1091 (N.J. 1993), that "whether a dangerous condition is present depends on a combination of factors relating to physical condition, permitted conduct, and objectively foreseeable behavior." Id. at 1095. We do not agree that Levin supports Appellants' position.

Contrary to Appellants' argument, the New Jersey Supreme Court in Levin held that a "dangerous condition" refers to the "physical condition of the property itself and not to activities on the property." Id. at 1095. In Levin, the plaintiff suffered a paralyzing injury when he dove off a county bridge and hit a submerged sandbar. Id. at 1092. The plaintiff appealed the granting of summary judgment in favor of the various government entities arguing that the use of the bridge as a recreational facility, when the government entities were aware of this use, created a dangerous condition of property. Id. at 1095. The New Jersey Supreme Court affirmed that the bridge was not a dangerous condition. Id. at 1098. In its opinion, the court rejected the approach taken by the New Jersey Appellate Division in Burroughs v. City of Atlantic City, 560 A.2d 725 (N.J. Super. Ct. App. Div. 1989), and relied upon by Appellants in their brief. Levin, 626 A.2d at 1095-96. Burroughs held that "whether a dangerous condition is present depends on a combination of factors relating to physical condition, permitted conduct, and objectively foreseeable behavior." Burroughs, 560 A.2d at 731. The Levin court was concerned that

-7-

the Burroughs approach to determining whether there was a dangerous condition was too broad and noted that other courts have understood a "dangerous condition" to refer only to the "physical condition of the property itself." Levin, 626 A.2d at 1095 (citing Sharra v. City of Atlantic City, 489 A.2d 1252, 1255 (N.J. Super. Ct. App. Div. 1985)). The court was also concerned that the Burroughs doctrine would effectively eliminate the plan-or-design immunity conferred by N.J. Stat. Ann. § 59:4-6, because the plaintiff alleged that the bridge was a dangerous condition since its lacked signs or means of interdiction such as a chain-link fence. Id. at 1095-96.[1] The court noted that the plan-or-design immunity shelters the bridge designers' decision to accept or reject the concept of posting a chain-link fence along the sides of the bridge, and, therefore, reasoned that allowing consideration of whether the absence of a chain-link fence created a "dangerous condition" would permit plaintiffs to circumvent this plan-or-design immunity. Id. at 1096. Consequently, Appellants' reliance on Levin is misplaced as the specific language

---

[1] The plan-or-design immunity provision of the Act states:

> Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.

N.J. Stat. Ann § 59:4-6.

they rely upon in their brief was rejected by <u>Levin</u>.

The court in <u>Levin</u> also examined California case law because the California Tort Claims Act was the model for the New Jersey Act.  <u>Id.</u>  The court noted with approval that California cases have held that a physical defect in the public property must exist as a precondition to public-entity liability.  <u>Id.</u> at 1097.  Although the <u>Levin</u> court allowed that a physical defect in the property, such as a broken window, combined with the foreseeable neglect or misconduct of third parties, may result in the imposition of liability on the public entity because the combination renders the property unfit, the imposition of liability requires, first and foremost, a physical defect in the property.  <u>Levin</u>, 626 A.2d at 1098.  The <u>Levin</u> court concluded that there was no missing plate, no broken bolt, no defect in the bridge itself that caused or contributed to the cause of the accident, and, therefore, the bridge was not a "dangerous condition" under the Act.  <u>Id.</u>

Other cases brought under the Act clarify that a dangerous condition refers to a physical condition or defect of the property.  For example, in <u>Cordy</u>, the plaintiff alleged that a railroad track that intersected a road perpendicularly and was slightly elevated above the surface of the road was a "dangerous condition."  <u>Cordy</u>, 975 F. Supp. at 643. The court found that this was not a dangerous condition as a matter of law, primarily because the condition could not be rationally found to have created a substantial risk of injury.  <u>Id.</u>  In <u>Atalese v. Long Beach Twp</u>, 837 A.2d 1115 (N.J. Super. Ct. App. Div. 2003), the plaintiff sued Long Beach Township after she fell and hit her head as a result of an uneven roadway surface.  <u>Id.</u> at 1116.  The Department of Public Works had

installed a sewer extension in the area and created a depression approximately three-quarters of an inch in the surface of the roadway. <u>Id.</u> at 1116-17. The court concluded that this defect could have created a "dangerous condition," and, thus, summary judgment was inappropriate. <u>Id.</u> at 1118. In <u>Mendelsohn v. City of Ocean City</u>, Civ. A. No. 02-5390, 2004 U.S. Dist. LEXIS 20467 (D.N.J. 2004), plaintiffs sued Ocean City after an accident in which Mrs. Mendelsohn tripped and fell on the Boardwalk as a result of a protruding nail. <u>Id.</u> at *2. Plaintiffs claimed that a protruding nail amounted to a dangerous condition. <u>Id.</u> at *8. The court held that "[a] nail protruding one quarter of an inch is not within the category of defects encompassed by the liability provisions of the Act" because such a "minor defect" did not present a "substantial risk of injury." <u>Id.</u> at *13, 16. Each of these cases illustrates that a "dangerous condition" involves a physical defect.

In the instant case, there is no evidence that there was a physical defect in the Boardwalk. The Boardwalk is the width it was designed to be, it exists in its intended condition, and unlike a broken window or a protruding nail there is nothing inherently defective about the width of the Boardwalk. Appellants claim that the Boardwalk is too narrow. However, Appellants can establish that the Boardwalk is too narrow only if we consider the activities permitted on it. Consideration of the activities permitted on the Boardwalk to determine whether it constitutes a dangerous condition would require applying the <u>Burroughs</u> approach which was specifically rejected by the New Jersey Supreme Court in <u>Levin</u>.

The issue of whether the width of the Boardwalk contributed to the accident, or whether the accident was solely the result of the negligence of Finley and the four teenage cyclists, is a question of fact. However, that issue is immaterial, because, as a matter of law, the Boardwalk without any physical defect and existing as it was intended to be cannot be a "dangerous condition" as defined in the Act and interpreted in the relevant case law. See Levin, 133 N.J. at 1095. We find, accordingly, that the District Court did not err in holding that Appellants failed to establish that the Boardwalk was a dangerous condition.

Appellants also contend that the District Court erred when it failed to consider their argument that Ocean City is not entitled to the plan-or-design immunity provided by the Act. The plan-or-design immunity provides an affirmative defense as to which the public bears the burden of proof. May v. Atlantic City Hilton, 128 F. Supp. 2d 195, 202 (D.N.J. 2000). If a basis for the public-entity's liability is not established by another provision of the Act, then there is no need for an affirmative defense. In this case, Appellants have failed to show that Ocean City is potentially liable under N.J. Stat. Ann. § 59:4-2. Consequently, Appellants' argument that Ocean City is not entitled to this affirmative defense is irrelevant and their argument that the District Court erred by failing to consider whether Ocean City is entitled to the affirmative defense is without merit.

Furthermore, the District Court correctly found that neither the actions nor omissions of Ocean City were "palpably unreasonable" under N.J. Stat. Ann. § 59:4-2(b) so as to give rise to liability. See Johnson v. Essex County, 538 A.2d 448, 456-57 (N.J.

-11-

Super. Ct. Law Div. 1987) (explaining that "to be palpably unreasonable, [there] must be action or inaction that is plainly and obviously without reason or reasonable basis, capricious, arbitrary, or outrageous" (citation omitted). In addition, we find Ocean City is entitled to discretionary immunity under N.J. Stat. Ann. § 59:2-3(a) & (b) because the use and structure of the Boardwalk is clearly a "high-level policy determination" for this resort town. Costa v. Josey, 401 A.2d 526 (N.J. 1979).

## IV. Conclusion

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of Ocean City.