**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3739
_____

NATALIE J. CHARNEY,
A/K/A Natalie J. Charney-Silverman

v.

CITY OF WILDWOOD, c/o Mr. Gordon Ball, Director of
Personnel and Claims Coordinator, City of Wildwood

Natalie J. Charney,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-08-cv-04241)
District Judge: Hon. Joseph H. Rodriguez

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 21, 2011

BEFORE: BARRY, AMBRO and COWEN , Circuit Judges

(Filed: July 6, 2011)
_____

OPINION
_____

COWEN, Circuit Judge.

Natalie J. Charney appeals from the District Court's order granting summary judgment in favor of the City of Wildwood on her claim under the New Jersey Tort Claims Act. We will affirm.

I.

On August 25, 2006, at approximately 8:45 p.m., Charney was walking with her family on the boardwalk in Wildwood, New Jersey, when she tripped in a hole and fell.[1] The hole, which was at the edge of a wooden board, was triangular in shape, measuring about one and one-quarter inches at the base and extending out three and three-eighths inches. The hole was approximately one and one-half inches deep. Charney sustained a fractured patella, fractured rib, and fractured finger in the fall.

Charney filed a complaint in the United States District Court for the District of New Jersey against the City of Wildwood (the "City") seeking recovery for her injuries. Specifically, Charney claimed that the hole in the boardwalk was a "dangerous condition" of public property subjecting the City to liability under the New Jersey Tort Claims Act (the "NJTCA" or the "Act"). The District Court granted summary judgment for the City, concluding as a matter of law that the hole in the boardwalk was not a "dangerous condition" as defined by the Act, and that the City's actions and inactions regarding the hole were not "palpably unreasonable." See N.J. Stat. Ann. § 59:4-2. Charney now appeals from the District Court's order.

II.

---

[1] Charney is four feet, one inch tall, and was wearing a size one and one-half sneaker at the time of the incident.

2

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  We exercise jurisdiction pursuant to 28 U.S.C. § 1291.  We review a district court's order granting summary judgment de novo.  Union Pac. R.R. v. Greentree Transp. Trucking Co., 293 F.3d 120, 125 (3d Cir. 2002).  Therefore, we assess the record using the same summary judgment standard that guides the district courts.  See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the court "must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences therefrom in that party's favor."  N.J. Transit Corp. v. Harsco Corp., 497 F.3d 323, 326 (3d Cir. 2007).

III.

The NJTCA provides that public entities "shall only be liable for their negligence within the limitations of the Act."  N.J. Stat. Ann. § 59:1-2.  Under this act, immunity from tort liability is the general rule and liability is the exception.  Bombace v. City of Newark, 593 A.2d 335, 341 (N.J. 1991).  One such exception is provided by § 59:4-2, which states:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a.  a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

3

b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

N.J. Stat. Ann. § 59:4-2. The statute defines a "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J. Stat. Ann. § 59:4-1(a). "In certain cases, this question of 'dangerous condition' must be resolved by the court as a matter of law, in order to ensure that the 'legislatively-decreed restrictive approach to liability' is enforced." Cordy v. Sherwin Williams Co., 975 F. Supp. 639, 643 (D.N.J. 1997) (quoting Polyard v. Terry, 390 A.2d 653, 658 (N.J. Super. Ct. App. Div. 1978), overruled on other grounds as recognized in Lee's Hawaiian Islanders, Inc. v. Safety First Prods., Inc., 480 A.2d 927, 933 (N.J. Super. Ct. App. Div. 1984)).

Although "palpably unreasonable" is not defined in the NJTCA, the New Jersey Supreme Court has interpreted the phrase to mean something more than mere negligence. Kolitch v. Lindedahl, 497 A.2d 183, 187 (N.J. 1985) ("We have no doubt that the duty of ordinary care, the breach of which is termed negligence, differs in degree from the duty to refrain from palpably unreasonable conduct. The latter standard implies a more obvious and manifest breach of duty and imposes a more onerous burden on the plaintiff."). "Palpably unreasonable" actions are actions that are "patently unacceptable under any given circumstance" and so unreasonable that "it must be manifest and obvious that no

4

prudent person would approve." Id. (internal quotation marks and citation omitted).

Although the question of palpable unreasonableness is, like the dangerous condition question, generally one for a jury, it may be decided by the court as a matter of law in appropriate cases. Garrison v. Township of Middletown, 712 A.2d 1101, 1116 (N.J. 1998) (Stein, J., concurring).

In this case, the District Court concluded that the hole in the boardwalk was not a dangerous condition within the meaning of the NJTCA because it was only a minor defect. In reaching this conclusion, the court reviewed case law from New Jersey and federal courts and explained that "[w]hile it is difficult to precisely define what, exactly, may constitute a dangerous condition, the cases that consider small holes, voids, or height deviations in walkways or roadway surfaces generally hold that such defects are not dangerous conditions as defined by the Tort Claims Act." (App. 17 (citing Ciricillo v. United States, No. 03-3039, 2005 WL 2406096, at *3 (D.N.J. Sept. 29, 2005) ("[T]he relevant case law includes many examples of minor surface defects that do not constitute dangerous conditions."); Cordy, 975 F. Supp. at 643 (holding that railroad track raised seven-eighths of an inch above roadway surface not a dangerous condition for bicycle riders); McCarthy v. Township of Verona, No. A-2210-99T2, 2001 WL 1917169, at *2 (N.J. Super. Ct. App. Div. April 16, 2001) (holding that one and one-half inch horizontal gap and one and one-quarter inch vertical height differential between concrete sidewalk slabs not a dangerous condition for pedestrians); Gohel v. Sherry, No. A-1610-97T1, 1998 WL 34024178, at *1 (N.J. Super. Ct. App. Div. December 23, 1998) (holding that two sidewalk cracks one to two inches wide, one-half inch deep, and five to six

5

inches long, were not dangerous conditions); Polyard, 390 A.2d at 655-56 (holding that three-eighths inch differential in road height was not a dangerous condition for vehicular travel)).) Based on these and other cases, the District Court concluded that the relatively small hole in the boardwalk did not create a "substantial risk of injury" under the Act. See N.J. Stat. Ann. § 59:4-1(a).

The District Court further found that the City's actions with respect to the hole were not palpably unreasonable because, even assuming that it had notice of the hole, the decision to "leave a one and one-half inch deep, one and one-quarter inch wide triangular hole unrepaired" was "at worst . . . negligent." (App. 21.) The court noted that the City made daily inspections of the boardwalk and repaired those defects it deemed sufficiently hazardous. According to the court, while the City arguably could have made more thorough repairs to the boardwalk, "[i]mperfections in boardwalk surfaces are commonplace, and the failure of a public entity to remedy every small defect in a boardwalk simply cannot be deemed palpably unreasonable." (Id. at 21-22 (citing Mendelsohn v. City of Ocean City, No. 02-5390, 2004 WL 2314819, at *7-8 (D.N.J. October 12, 2004) (holding that Ocean City's failure to repair the one-quarter inch raised nail in its boardwalk was not palpably unreasonable because Ocean City conducted safety inspections of the boardwalk four to six times per month, and because the section of the boardwalk where the plaintiff fell was scheduled to be replaced at a later date)).)

Charney now argues that the District Court erred in concluding that the hole in the boardwalk was not a dangerous condition and that the City's failure to repair the hole was not palpably unreasonable. Even assuming, *arguendo*, that the hole was a dangerous

6

condition, we agree with the District Court that the City was nonetheless entitled to summary judgment because the City's actions regarding the hole do not rise to the level of "palpably unreasonable." As the District Court explained, the City's failure to repair such a small defect in a walkway surface is not the type of "patently unacceptable" behavior contemplated by N.J. Stat. Ann. § 59:4-2. See Johnson v. Essex County, 538 A.2d 448, 456-57 (N.J. Super. Ct. Law Div. 1987) (explaining that "to be palpably unreasonable, [there] must be action or inaction that is plainly and obviously without reason or reasonable basis, capricious, arbitrary, or outrageous"). Because the NJTCA imposes no liability on a public entity for failure to take protective action against a dangerous condition so long as such inaction was not palpably unreasonable, the District Court properly entered judgment in favor of the City.

IV.

We have considered Charney's remaining arguments and conclude that they are without merit. Accordingly, we will affirm the District Court's order.