

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-7-2007

# NJ Transit Corp v. Harsco Corporation

Precedential or Non-Precedential: Precedential

Docket No. 06-3507

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"NJ Transit Corp v. Harsco Corporation" (2007). *2007 Decisions*. Paper 508.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/508

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3507
_____

NEW JERSEY TRANSIT CORPORATION,

Appellant

v.

HARSCO CORPORATION; HARSCO TRACK
TECHNOLOGIES, Division of Harsco Corporation;
HARSCO FAIRMONT TAMPER TRACK
TECHNOLOGIES, Division of Harsco Corporation; W. W.
WILLIAMS SOUTHEAST, INC.; DETROIT DIESEL
CORPORATION

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 03-cv-2724)

District Judge: Honorable Katharine S. Hayden
_____

Argued June 28, 2007

_____

Before: BARRY, FUENTES, and GARTH, <u>Circuit</u> <u>Judges</u>
(Opinion Filed: August 7, 2007)

David W. Smith [Argued]
Kevin J. Hughes
Cozen & O'Connor
1900 Market Street, 3rd Floor

Philadelphia, PA 19103
        *Counsel for Appellant*


John J. Weinholtz [Argued]
David H. Tennant
Nixon Peabody LLP
40 Fountain Plaza, Suite 500
Buffalo, NY 14202

David W. Field
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068
        *Counsel for Appellee Harsco Corp.*

E. Graham Robb
John C. Falls
John A. Miller, Jr. [Argued]
Christie, Pabarue, Mortensen and Young, PC
1880 JFK Boulevard, 10th Floor
Philadelphia, PA 19103
        *Counsel for Appellees Detroit Diesel Corp., W.W. Williams Southeast, Inc. et al.*

_____

OPINION

_____


GARTH, <u>Circuit</u> <u>Judge</u>:

This appeal requires us to decide if, in a contract governed by Article 2 of New Jersey's Uniform Commercial Code ("U.C.C."), *see* N.J. Stat. Ann. § 12A:2-101 et seq., appellant New Jersey Transit Corporation ("Transit") can rely on the implied warranties of merchantability and fitness for a particular purpose to recover damages, where the contract's one-

year express warranty had expired at the time of the loss. The District Court, exercising diversity jurisdiction, 28 U.S.C. § 1332, granted summary judgment in favor of appellee Harsco Corporation ("Harsco") and all other appellees,[1] holding that the express warranty of one year governs. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We will affirm.

I.

In March 1998, Transit issued an Invitation for Bid for the procurement of a new track geometry inspection vehicle ("TGIV"). The Invitation for Bid included Transit's required specifications for the TGIV; 57 paragraphs over 27 pages detailed all the equipment, material, and design requirements Transit mandated for the TGIV. Paragraph 55 stated:

> Warranty:
>
> *The contractor shall warranty the car and all equipment and components installed on it for one (1) year after break in period and final acceptance. This shall be one (1) warranty and shall be provided by the contractor, not the suppliers, subcontractors, or anyone else.* The warranty period shall start on the day after the service representative leaves and the car has been finally accepted. Final acceptance is when NJ TRANSIT inspects the car after the service representative has been on the property for at least one (1) week and the car is found to meet specifications and is functioning properly. Abuse (by NJ TRANSIT), accidents and lack of proper (as stated in instruction books) maintenance are not covered by the warranty. Minor items, like lamps and fuses, are not part of the warranty. The

---

[1]Because Harsco is the principal appellee and the manufacturer and seller of the inspection vehicle at issue, we will refer only to Harsco throughout this opinion as the appellee. We dispose of the contentions pertaining to the other appellees in footnote 4, *infra*.

3

warranty shall cover the cost of both parts and labor required to repair defects that occur during the term of the warranty. Corrections shall be made in a timely manner. Any modifications requiring redesign necessary to satisfy the warranty shall be completed within thirty (30) calendar days of notification.

(App. 456.) (emphasis added).

In June 1998, Harsco submitted a bid to Transit to manufacture the TGIV at a price of $2,296,500. As required by Transit's bid procedure, Harsco also submitted a technical proposal dated May 22, 1998, setting forth the details as to how Harsco planned to satisfy all 57 paragraphs of Transit's specifications for the TGIV.

Harsco was awarded the contract. The contract attached and incorporated the specifications that were included in Transit's Invitation for Bid, including paragraph 55, the warranty provision. Harsco signed and returned the copies of the contract, and Transit provided Harsco with a copy of the fully-executed contract on August 24, 1998.

Appellee Detroit Diesel Corporation ("Detroit Diesel"), the manufacturer of the diesel drive engine Harsco used in the TGIV, and appellee W.W. Williams Southeast, Inc. ("Williams"), the Detroit Diesel distributor that sold the engine to Harsco, provided a one-year limited warranty for the engine. The limited warranty provided coverage for the repair or replacement of any engine component that failed during the first twelve months of operation as a result of a defect in material or worksmanship. It also provided that:

THIS LIMITED WARRANTY IS THE ONLY WARRANTY APPLICABLE TO THESE ENGINES AS USED IN CONSTRUCTION AND INDUSTRIAL APPLICATIONS. DETROIT DIESEL CORPORATION MAKES NO OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED

WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. DETROIT DIESEL CORPORATION SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES AS DESCRIBED ABOVE.

(App. 559.) The terms of this warranty were also included with the Engine Operator's Guide provided to Transit.

Harsco delivered the TGIV to Transit in April 2000, and it was placed in service in June or July 2000. According to Transit's allegations, on or about September 17, 2002, while "Transit employees were operating the TGIV under normal and foreseeable conditions, the engine of [the] TGIV caused and/or contributed to the cause of a fire" and "[a]s a result of the fire, the TGIV was a total loss." (App. 74 at ¶¶ 12, 13.)

Transit filed a complaint in the United States District Court for the District of New Jersey against Harsco on June 4, 2003, alleging claims for negligence, product liability, and breach of warranties. In turn, Harsco filed a third-party complaint against Detroit Diesel and Williams, alleging claims for contribution, indemnification, and breach of warranties. Transit then filed an amended complaint, adding Detroit Diesel and Williams as direct defendants. In the amended complaint, Transit alleges that Harsco, Detroit Diesel, and Williams breached both the express warranty and the warranties implied in the sale under the New Jersey U.C.C. Transit alleges that it sustained property damage and extra expenses of over $3 million.

Harsco filed a motion for summary judgment,[2] arguing, *inter alia*, that any applicable warranty governing the TGIV had expired at the time of the fire. The District Court heard oral argument on this issue, and rendered an oral opinion granting summary judgment in favor of all appellees. Transit appeals.

---

[2]The other appellees also filed motions for summary judgment.

II.

We exercise plenary review over a district court's order granting summary judgment. *Horn v. Thoratec Corp.*, 376 F.3d 163, 165 (3d Cir. 2004). As did the District Court, we must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences therefrom in that party's favor. *Id.* at 166. Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

III.

Transit alleges that Harsco breached both the express warranty and the implied warranties of fitness for a particular purpose and merchantability. There is no disagreement that paragraph 55 of the contract provided an express warranty of one year; the dispute here focuses on whether paragraph 55 also limited the duration of any implied warranties to one year.

As the contract at issue here involved the sale of goods, the parties agree that it is governed by Article 2 of the U.C.C., as adopted by New Jersey. *See* N.J. Stat. Ann. § 12A:2-101 et seq. There are several provisions of the U.C.C. relevant to this dispute. First, section 12A:2-314 provides, in relevant part, that "[u]nless excluded or modified (12A:2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J. Stat. Ann. § 12A:2-314(1). The next section, 12A:2-315, states that:

> [w]here the seller at the time of contracting has reason to know any particular purpose for which

6

the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.J. Stat. Ann. § 12A:2-315. Section 12A:2-316, entitled "Exclusion or modification of warranties," declares, in part, that:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

N.J. Stat. Ann. § 12A:2-316(2). Finally, section 12A:2-725, entitled "Statute of limitations in contracts for sale," provides, in part, that:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made . . . .

N.J. Stat. Ann. § 12A:2-725(1), (2).

Transit argues that in order to "exclude or modify" either

7

the implied warranty of merchantability or fitness for a particular purpose, the contract must satisfy the requirements of § 12A:2-316. In that regard, Transit points out that paragraph 55 does not mention the word "merchantability." Nor does paragraph 55 include any general language, such as that offered in § 12A:2-316, to disclaim the implied warranty of fitness for a particular purpose. Arguing that the exculpatory clauses allowed by U.C.C. § 2-316 are subject to strict construction, *see Neville Chem. Co. v. Union Carbide Co.*, 422 F.2d 1205, 1219 (3d Cir. 1970) ("Strict construction of exculpatory clauses is also indicated by the Uniform Commercial Code which requires sellers use very specific language in order to modify or disclaim liability to purchasers for a breach of the implied warranties."), Transit concludes that the absence of any language specifically addressed to the implied warranties means that the one-year time limit contained in paragraph 55 pertains only to the express warranty. Accordingly, Transit maintains that the duration of the implied warranties remains unchanged by paragraph 55, and that, per § 12A:2-725, Transit can sue for a breach of those warranties any time up to four years from tender of delivery.

By contrast, Harsco claims that the implied warranties were subsumed by the exceptionally broad warranty of paragraph 55, and that its one year duration applied to all warranties, express or implied. For statutory support, Harsco points to § 12A:2-725, which it asserts provides authority for shortening the duration of a warranty, whether express or implied.

Harsco also argues that here, where the contract, including the warranty provision, was drafted by the buyer; where the warranty was exceptionally broad; and where both parties were sophisticated business entities dealing at arms-length, to strictly apply the requirements of § 12A:2-316 would afford Transit three years' additional protection for which it did not bargain or pay.

The District Court agreed with Harsco that § 12A:2-725 was the authority by which the contracting parties could and did reduce the duration of the warranty period. *See* App. 203. The Court reasoned that because paragraph 55's warranty was so

8

broad and the Invitation to Bid's specifications so lengthy and detailed, no specific language was necessary to limit the implied warranties: "where the parties have made such a clear expression of what they agree to, they [do not] need to make an equally clear expression of what they don't agree to." (App. 204.) The District Court found that here, where the warranty was drafted by the buyer and there was no gross inequality of bargaining power, it would be unfair "[t]o have silence or omission support three more years of such global responsibility." (App. 205.) In addition, the District Court held that this interpretation of paragraph 55 necessarily meant that Detroit Diesel and Williams also could not be liable for the alleged breach and, in the alternative, that these subcontractors' disclaimers of implied warranties were effective against Transit. *See* App. 207.

IV.

As a justification for holding that paragraph 55 shortened the length of any implied warranties even though it did not include the language mandated by § 12A:2-316, the District Court agreed with Harsco that it was not § 12A:2-316, but § 12A:2-725, a provision with no specific language requirements, which governs the parties' ability to shorten the length of express and implied warranties. We cannot agree.

Section 12A:2-725 provides only that in the original agreement the parties may reduce to one year, but may not extend beyond four years, the period after a breach of contract within which a party may commence an action, and provides a four-year default if the parties do not contract for an alternative. The length of time a party has to commence a suit is distinct from the length of time a product is under warranty. For example, a warranty may expire after a year, but if the parties have not chosen to contract around § 12A:2-725's default statute of limitations, the buyer may bring suit based on that warranty for events occurring during that first year and until four years after the breach.

Paragraph 55 contains no language shortening the statute

9

of limitations, only language shortening the warranty period, and thus the statute of limitations remains § 12A:2-725's four years, regardless of whether an express or implied warranty is involved.

V.

We turn to consideration of § 12A:2-316, the U.C.C. provision primarily at issue here. This is hardly the typical case where we are asked to construe the provisions of the U.C.C. regarding the exclusion or modification of implied warranties. For example, ordinarily the parties' contract is drawn by the seller of goods, and typically the seller has disproportionately greater bargaining power than the buyer. Here, by contrast, the buyer not only drafted the contract, but also included numerous and detailed specifications to which the seller was required to accede, including a broad one-year warranty. Thus, not only was this contract not drawn by the usual party, but also–even though the parties to this contract were two sophisticated commercial entities dealing at arms-length–it was the buyer, who dictated all the contract's terms, whose bargaining power was superior. Considering this atypical scenario, we turn to the commentary to § 12A:2-316 for guidance.

Comment 9 to § 12A:2-316 observes that while the "situation in which the buyer gives precise and complete specifications to the seller is not explicitly covered in this section, . . . this is a frequent circumstance by which the implied warranties may be excluded." N.J. Stat. Ann. § 12A:2-316 cmt. n.9. The comment continues on to explain that:

> [t]he warranty of fitness for a particular purpose would not normally arise since in such a situation there is usually no reliance on the seller by the buyer. The warranty of merchantability in such a transaction, however, must be considered in connection with [§ 12A:2-317]. Under paragraph (c) of that section in case of [an inconsistency between an implied warranty of merchantability

10

and an express warranty,] the implied warranty of merchantability is displaced by the express warranty that the goods will comply with the specifications. *Thus, where the buyer gives detailed specifications as to the goods, neither of the implied warranties as to quality will normally apply to the transaction unless consistent with the specifications.*

*Id.* (emphasis added).

Turning first to the implied warranty of fitness for a particular purpose, it is clear that there was no reliance on the skill or judgment of the seller (Harsco) by the buyer (Transit); indeed, Transit specified precisely what it required. For this reason, we are satisfied that the facts here represent a scenario where there was no implied warranty of fitness for a particular purpose.

With regard to the implied warranty of merchantability, the comment makes clear that the existence and extent of this implied warranty require consideration of § 12A:2-317. That section provides, in relevant part, that:

Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant. In ascertaining that intention the following rules apply:

. . .

(c) Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose.

N.J. Stat. Ann. § 12A:2-317.

Our task is thus to discern whether the express warranty in paragraph 55 and an implied warranty of merchantability are

11

consistent, keeping in mind that we are obligated to construe them as consistent and cumulative, unless such construction is unreasonable. Applying this rule of construction to the contract at issue and the facts of this case, we conclude that it is only reasonable to construe the two warranties as consistent with each other for the one year term of the express warranty. Beyond that period, the implied warranty of merchantability conflicts with the contract's specifications, and is therefore displaced by the express warranty. *See* N.J. Stat. Ann. § 12A:2-317(c).

In the same way that the contract drawn by Transit required Harsco to comply with certain equipment, material, and design specifications, it also required Harsco to sign on to a warranty specification. The required warranty of paragraph 55 was extremely broad, covering all "parts and labor required to repair defects" occurring in the first year in "the car and all equipment and components installed on it." In all respects except for the time limitation, the express warranty is consistent with an implied warranty of merchantability, which "simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." *Henningsen v. Bloomfield Motors*, 161 A.2d 69, 76 (N.J. 1960); *cf. id.* at 80 (stating, in the case of a very limited, 90-day warranty against defective parts and workmanship, that broad implied warranties cannot be excluded for the sole reason that they are inconsistent with express warranties). However, insofar as the implied warranty would last longer than the one year term of the express warranty, it would be unreasonable to construe the two as consistent beyond the one year term.

For instance, a prospective bidder receiving Transit's Invitation to Bid and the mandated specifications would reasonably conclude that it was required to warranty the TGIV for only one year, and would structure its bid price accordingly. An implied warranty which lasts beyond one year would require an entirely different set of calculations, and would conflict with the expressed intent of the contract that the bidder only be responsible to warranty the TGIV for a single year. While the express and implied warranties can coexist for the one-year term of the express warranty, after that first year they are inconsistent

and the implied warranty of merchantability is displaced. Accordingly, at the time Transit's TGIV was damaged, no warranty was any longer in effect.

We emphasize that we are not interpreting § 12A:2-316 to allow all express warranties of limited duration to impliedly exclude or modify implied warranties. Instead, we base our holding on the fact that here, paragraph 55's global warranty was incorporated into the specifications, and even the commentary to § 12A:2-316 recognizes that the instance in which a "buyer gives precise and complete specifications to the seller" is not the ordinary circumstance that the section is designed to address. Nevertheless, we believe our holding is in line with the general purpose of § 12A:2-316, which, according to the commentary, is to ensure that there are no surprises concerning which warranties accompany the goods sold. *See* N.J. Stat. Ann. § 12A:2-316 cmt. n.1. *See also Travel Craft, Inc. v. Wilhelm Mendhe GmbH & Co.*, 552 N.E.2d 443, 445 (Ind. 1990) (holding that to apply Ind. Code § 26-1-2-316(2) (which is identical to § 12A:2-316) "in favor of . . . the *buyer* and *drafter* of the warranty, would subject the seller to the same type of surprise the provision is intended to prevent.").[3]

---

[3]Though similar in that the warranty in *Travel Craft* and the warranty at issue here were drafted by the buyer, the two warranties differ in a significant way. In *Travel Craft*, the warranty provision included the statement that "[t]here are no other warranties, express or implied." *Travel Craft*, 552 N.E.2d at 444. The buyer-drafter asserted that this disclaimer was ineffective as to the implied warranty of merchantability because Ind. Code § 26-1-2-316(2) (which is identical to N.J. Stat. Ann. § 12A:2-316(2)) provided that a disclaimer of that warranty was only effective if, *inter alia*, it used the word merchantability. After noting that the purpose of this requirement was to protect the buyer from unfair surprise, the *Travel Craft* court stated that "[a]ccepting [the buyer's] argument would turn a buyer's shield against surprise into a buyer's sword of surprise," and concluded that "if the buyer drafts the disclaimer it cannot in good faith claim surprise or unexpected and unbargained for language." *Id.* at 445.

While unlike *Travel Craft* this case does not involve a disclaimer, we believe that the general principle underlying *Travel Craft* applies here as well. That is, because the goal of having stringent requirements in order to disclaim implied warranties is to protect the buyer from surprise, where the buyer is the drafter of the warranty the court will take a more critical position towards the buyer's claim of unfair surprise and, as we do here, a

Because we conclude that in this case there was no implied warranty of fitness for a particular purpose, and that the implied warranty of merchantability was displaced by paragraph 55's express warranty after one year, we hold that at the time Transit's TGIV was destroyed by fire, all warranties had expired. The order of the District Court granting summary judgment to Harsco and the other appellees will be affirmed.[4]

_____

more lenient view of the seller's claim of unfair surprise.

[4]We affirm the grant of summary judgment in favor of Detroit Diesel and Williams without deciding whether the implied warranty disclaimer these subcontractors included in their contract with Harsco is effective against Transit. We note that this is an unresolved question of New Jersey law. *See Spring Motors, Inc. v. Ford Motor Co.*, 489 A.2d 660, 674, 677 (N.J. 1985) (while holding that "the absence of privity between a remote supplier and an ultimate purchaser should not preclude the extension to the purchaser of the supplier's warranties made to the manufacturer," also "reserv[ing] determination on the effectiveness of a remote manufacturer's disclaimer or limitation on express and implied warranties to an ultimate purchaser that did not have the opportunity to negotiate over the terms of the agreement.").

Having determined that all warranties which arose in the contract between Transit and Harsco expired after one year, there can be no warranty for the subcontractors to fulfill no matter how we would answer this question of first impression. For example, there is obviously no warranty if the disclaimer is effective against Transit. However, if it is not effective, then Detroit Diesel and Williams must be bound by the warranty in the contract between Transit and Harsco, the very warranty we have just decided had expired by the time of the fire.

14