NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-3615

_____

LARRY LYLE LASKO,

Appellant

v.

HARRELL WATTS, Administrator for National Inmate Appeals; SCOTT DODRILL,
Regional (NE) Director the B.O.P.; RONNIE HOLT, Warden, F.C.I. Schuylkill,
Minersville, PA; RUSSELL C. HENDERSHOT, D.O. M.S. F C.I. Schuylkill;
EDGARDO ONG, Health Services Administrator F.C.I. Schuylkill;
Ms. M. WAMBACH, P.A. FMG, F.C.I. Schuylkill; Mr. HEADER, Law Library &
Education Supervisor, F.C.I. Schuylkill; AMY LEONARD, Unit 2 Manager, F.C.I.
Schuylkill; M. PLESH, Unit 2 Case Manager, F.C.I. Schuylkill;
D. SHIRES, Unit 2-A Counselor, F.C.I. Schuylkill

On Appeal From the United States District Court
for the Middle District of Pennsylvania
(06-cv-2126)
District Judge:  Honorable Thomas I. Vanaskie

Argued February 25, 2010

Before: CHAGARES, STAPLETON, and LOURIE,[*] Circuit Judges.

(Filed: April 12, 2010 )

_____

[*]The Honorable Alan D. Lourie, Circuit Judge for the United States Court of
Appeals for the Federal Circuit, sitting by designation.

_____

OPINION OF THE COURT
_____

Thomas S. Jones
Jean M. Mosites (Argued)
Jones Day
500 Grant Street
Suite 4500
Pittsburgh, PA 15219-2514
        *Counsel for Appellant*

Dennis C. Pfannenschmidt
United States Attorney
G. Michel Thiel (Argued)
Assistant U.S. Attorney
Middle District of Pennsylvania
235 North Washington Avenue
Suite 311
Scranton, PA 18501
        *Counsel for Appellees*

CHAGARES, Circuit Judge.

Larry Lasko, an inmate incarcerated at the Schuylkill Federal Correctional Institution in Minersville, Pennsylvania ("FCI-Schuylkill"), appeals from orders of the District Court granting summary judgment for defendants and denying Lasko's motion for appointment of counsel under 28 U.S.C. § 1915(e)(1).  We will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts.  Lasko suffers from chronic hepatitis C, a viral disease that

2

can cause significant liver damage. The Bureau of Prisons ("BOP") guidelines on the treatment of hepatitis C, see Joint Appendix ("J.A.") 137-58, recommend that physicians weigh a number of factors when assessing the appropriate form of treatment and determining the best timing for initiating treatment. These guidelines advise that before beginning a course of treatment with the antiviral medications ribavirin and interferon, an inmate should be assessed for potential contraindications and treatment limitations. Moreover, because of the potential side effects from these medications, the guidelines instruct that patients must be carefully monitored and examined while undergoing a course of treatment.

Consistent with these guidelines, Lasko received a series of laboratory tests, physical examinations, and psychological evaluations before starting on a regimen of ribavirin and interferon. Upon his transfer to FCI-Schuylkill on April 12, 2004, Lasko received a medical intake screening, which noted his history of hepatitis C. After this initial screening, Lasko underwent a series of laboratory tests to evaluate his liver function. Lasko received physical examinations from defendant Dr. Russel Hendershot and other medical staff, and Lasko was evaluated on several occasions by a psychiatrist. Lasko was also referred to a gastroenterology specialist, who recommended treating Lasko with interferon and ribavirin. After seeing the gastroenterologist, Lasko was scheduled for a liver biopsy. On October 5, 2005, Dr. Hendershot examined Lasko, explained the results from the biopsy, and instructed him that his antiviral treatment

3

would begin shortly. Dr. Hendershot also explained that Lasko would need to submit to weekly examinations and periodic blood work to be eligible for the treatment. Over a year passed between Lasko's initial incarceration at FCI-Schuylkill and the commencement of an antiviral medication regimen, but Lasko was evaluated and treated by medical staff throughout this time period. During this time, Lasko submitted numerous letters and administrative grievances regarding his medical treatment.

Lasko began receiving ribarivin and interferon on October 17, 2005. On November 8, 2005, Lasko refused to speak with or be examined by Dr. Hendershot. Dr. Hendershot consulted with the BOP regional medical director, who recommended discontinuing treatment because the ribavirin and interferon regimen could not be continued without physical and psychological examinations. Dr. Hendershot continued the medication treatments for another week, pending a psychological examination. The staff psychologist reported that Lasko had failed to appear for appointments on at least three occasions. On November 15, 2005, Lasko again refused to be examined by Dr. Hendershot. At this time, Dr. Hendershot discontinued the ribavirin and interferon treatment regimen. Lasko contends that his treatment was discontinued because Lasko filed an administrative grievance against Dr. Hendershot, not because Lasko refused to comply with the required physical and psychological examinations.

On May 1, 2006, Lasko requested that his medication treatments be resumed, and on June 7, 2006, he was re-started on ribavirin and interferon. On June 14, 2006,

4

however, Lasko refused to allow blood samples to be drawn for laboratory work. In addition, Lasko exhibited abusive and disruptive behavior during two medical appointments. On October 25, 2006, a review of Lasko's treatment plans and laboratory reports indicated that the medication regimen had not been effective, as his viral load had not declined and stabilized. After consulting with the BOP regional clinical director, Dr. Hendershot discontinued Lasko's medication regimen on October 27, 2006. Lasko contends that his treatment was discontinued in retaliation for his administrative and legal actions against defendants.

Lasko initiated this action by filing a pro se complaint on October 30, 2006.[1] The complaint names ten individuals as defendants, including two BOP administrators and eight FCI-Schuylkill employees. Lasko alleges that defendants knew of Lasko's chronic hepatitis C condition but delayed treating him for eighteen months. J.A. 71-73. The complaint seeks relief under the First and Eighth Amendments, the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213. J.A. 67, 70. The complaint also lists several specific legal claims: (1) deliberate indifference to serious medical need; (2) retaliation; and (3) denial of access to the courts. J.A. 76. After Lasko filed this complaint, the District Court sent him a Standing Order indicating that each party had six months from the filing of its last

---

[1]Lasko filed an earlier lawsuit, Lasko v. Hendershot, No. 05-cv-0991 (M.D. Pa. Sep. 29, 2006), approximately one month before initiating this action. This earlier action was dismissed for failure to exhaust administrative remedies.

5

pleading to complete discovery.

On June 6, 2007, defendants moved for summary judgment on all of Lasko's claims, filing supporting papers on June 27, 2007. On July 27, 2007, Lasko filed a motion for enlargement of time to respond to defendants' motion for summary judgment; a motion for the appointment of counsel; and several discovery requests. On August 6, 2007, Lasko filed another discovery request. On September 4, 2007, the District Court granted defendants' motion for an extension of time to respond to Lasko's discovery requests, permitting defendants to respond within thirty days of the court's resolution of defendants' motion for summary judgment. On September 11, 2007, Lasko filed a brief opposing defendants' motion for summary judgment.

On March 25, 2008, the District Court denied Lasko's motion for appointment of counsel, concluding that Lasko had demonstrated the ability to represent himself, at least through this stage of the litigation. On August 12, 2008, the District Court granted defendants' motion for summary judgment, dismissing all of Lasko's claims and ordering the case closed. Lasko timely appealed.

## II.

We review a district court's denial of counsel to an indigent civil litigant for abuse of discretion. See, e.g., Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002). A district court abuses its discretion "if its decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" Id.

6

(quoting Newton v. Merrill Lynch, 259 F.3d 154, 165-66 (3d Cir. 2001)).

We review de novo the District Court's substantive decision to grant summary judgment for defendants, applying the same standard that the District Court was obligated to apply. Gonzalez v. AMR, 549 F.3d 219, 223 (3d Cir. 2008). "Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. (citation omitted); see Fed. R. Civ. P. 56(c). On summary judgment, "we must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences therefrom in that party's favor." N.J. Transit Corp. v. Harsco Corp., 497 F.3d 323, 326 (3d Cir. 2007) (citation omitted). For Lasko's claim that the District Court granted summary judgment prematurely, we review for abuse of discretion. See Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

III.

Lasko first argues that the District Court abused its discretion in denying his motion for appointment of counsel and in declining to appoint counsel sua sponte later in the proceedings. "Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." Montgomery, 294 F.3d at 498. Congress has granted district courts the discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). A district court has "broad discretion" to determine whether counsel should be appointed. Montgomery, 126 F.3d at 498. We have outlined

7

a two-step process for determining whether counsel should be appointed. First, as a "threshold matter," the district court "must assess whether the claimant's case has some arguable merit in law and fact." Montgomery, 126 F.3d at 499. Second, we have provided a list of factors to guide the district court's discretion. See Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993). These factors include:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

Parham, 126 F.3d 454, 457 (3d Cir. 1997) (citing Tabron, 6 F.3d at 155-56, 157 n.5). This list of factors "is not exhaustive, but should serve as a guidepost for the district courts." Id. We have also instructed that "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." Parham, 126 F.3d at 458.

As a "threshold matter," before a court may appoint counsel for an indigent civil litigant, "'it must first appear that the claim has some merit in fact and law.'" Tabron, 6 F.3d at 155 (quoting Maclin v. Freake, 650 F.2d 885, 887 (7th Cir. 1981) (per curiam)). This burden is met if the "'plaintiff has not alleged a frivolous or malicious claim and the pleadings state a prima facie case.'" Id. (quoting Rayes v. Johnson, 969 F.2d 700, 703 (8th Cir. 1992), cert. denied, 506 U.S. 1021 (1992)). Lasko argues that his FTCA medical

8

malpractice claim, his Eighth Amendment claim, and his First Amendment retaliation claim met this low initial hurdle. We agree. To determine whether the District Court abused its discretion in denying Lasko's motion for counsel, we must therefore analyze the factors set forth in Tabron.

The first, and "[p]erhaps the most significant," factor influencing whether counsel should be appointed in a civil case is the plaintiff's ability to present his case to the court. Montgomery, 294 F.3d at 501. In evaluating this factor, courts "should consider the plaintiff's education, literacy, prior work experience, and prior litigation experience," along with "whether the plaintiff has access to necessary resources like a typewriter, telephone and computer." Parham, 126 F.3d at 459 (citations and quotation marks omitted). In this case, the District Court concluded that, at least up through the time of that motion, "Lasko has possessed the means and ability to present his claims to the court." J.A. 14. The court acknowledged that Lasko suffered from serious medical issues that may limit his ability to represent himself, but found that despite "the many physical difficulties under which Lasko operates," the record is "amazingly full and complete of examples of Lasko's ability to file motions, discovery, briefs, and exhibits relevant to this case." Id. Although a plaintiff's ability to present and respond to motions does not "conclusively establish" that a plaintiff is able to present his case, Parham, 126 F.3d at 459, we agree with the District Court that Lasko's numerous submissions indicated that he was able to present the necessary legal and factual issues to the court.

9

The second factor to be considered is the complexity of the legal issues involved. Courts should be "more inclined to appoint counsel" if the legal issues are complicated. Tabron, 6 F.3d at 156. Counsel for defendants admitted during oral argument that this case involved complicated legal issues, but neither the substantive legal issues nor the procedural hurdles Lasko faced were unusually complicated. Unlike in Montgomery and Parham, procedural hurdles do not seem to have prevented Lasko from articulating his arguments in opposition to defendants' motion for summary judgment.

The third factor is the need for, and the plaintiff's ability to conduct, a detailed factual investigation. Courts should consider "the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation." Tabron, 6 F.3d at 156. Where the plaintiff's claims are "likely to require extensive discovery and compliance with complex discovery rules, appointment of counsel may be warranted." Id. In this case, Lasko successfully obtained all of his relevant medical records, presented detailed factual chronologies in his pleadings, and submitted extensive documentation to support his various filings with the court. As the District Court noted, "many of his filings include portions of his own medical records, [and] excerpts of medical textbooks and journals." J.A. 14-15. The District Court also noted that Lasko had shown "the ability to pose relevant discovery requests." J.A. 15. Lasko's lack of counsel does not appear to have prevented him from marshaling the factual information and evidence necessary to present his claims to the court.

10

The fourth factor bearing on the appointment of counsel is the role that credibility determinations may play in the litigation. Representation by skilled advocates is particularly important when a case is likely to turn on credibility determinations, because "it is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross examination." Tabron, 6 F.3d at 156 (citation and quotation marks omitted). In this case, the District Court declined to appoint counsel at the summary judgment stage but noted its ability to reconsider this decision if the case were to proceed to trial. Moreover, under the summary judgment standard, credibility determinations could not have played any role in the District Court's resolution of defendants' motion.

The fifth Tabron factor is the need for expert witnesses. Lasko emphasizes his need to submit expert testimony in order to establish his medical malpractice claim under the FTCA. This court has explained that "appointed counsel may be warranted where the case will require testimony from expert witnesses." Tabron, 6 F.3d at 156. We have held that a district court abuses its discretion by denying a motion for appointment of counsel because expert testimony would not be required to present the plaintiff's case but then granting a dispositive motion because of the lack of expert testimony. See Mongtomery, 294 F.3d at 505 ("successive contradictory decisions" effectively prevented plaintiff from presenting his claim); Parham, 126 F.3d at 460 ("It is troublesome that the court could use the lack of expert testimony as a shield to protect its denial of the motion for counsel and

11

then as a sword to slay the indigent plaintiff's case."). Our precedent cannot be read as requiring the appointment of counsel in every case in which expert testimony may be warranted, however. In this case, the District Court did not base its decision denying counsel on the erroneous assumption that Lasko would not need expert testimony. Rather, the District Court highlighted Lasko's demonstrated ability to present his claims to the court and the court's ability to appoint counsel later in the proceedings if the circumstances changed. J.A. 14-15. Although the District Court cited the lack of medical evidence as the reason for granting summary judgment on the medical malpractice claim, Lasko's case did not fall short merely because he was unable to retain a medical expert.

The final factor to be considered is the plaintiff's ability to retain and afford counsel. "If counsel is easily attainable and affordable by the litigant, but the plaintiff simply has made no effort to retain an attorney, then counsel should not be appointed by the court." Tabron, 6 F.3d at 157 n.5. The record lacks any evidence that Lasko had the means to retain private counsel.

Considering all of these factors, we conclude that the District Court did not abuse its discretion in declining to appoint counsel. Lasko was able to obtain the medical records and other documents underlying his claim, present the necessary factual information and legal arguments to the court, and respond to the issues raised by defendants' summary judgment motion. The District Court did not abuse its broad discretion in determining that counsel should not be appointed at this stage of the

12

litigation.

IV.

Lasko also challenges the District Court's order granting summary judgment for defendants, arguing that the District Court should have allowed Lasko to conduct additional discovery before deciding defendants' motion for summary judgment and that the District Court erred in its substantive analysis of that motion.

A.

It is "well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." Doe, 480 F.3d at 257 (citations and quotation marks omitted). "If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion." Id. at 257. In Doe, we held that the district court abused its discretion by granting summary judgment for the defendants based on a single affidavit before allowing the plaintiffs any opportunity to conduct discovery into the issue on which the court granted summary judgment. 480 F.3d at 254. Although the "extent of discovery . . . is within the [district court's] discretion," the district court in Doe "needed to allow the parties to develop the record as to potentially relevant facts." Id. at 258.

Unlike in Doe, Lasko cannot claim that defendants or the District Court prohibited him from obtaining the information or evidence relevant to opposing the summary judgment motion. Before this lawsuit was even commenced, defendants provided Lasko

13

with all of his relevant medical records and the BOP guidelines on hepatitis C treatment. Lasko has not identified any outstanding discovery that would be relevant to the summary judgment motion. Given these circumstances, the District Court did not abuse its discretion in granting defendants' motion for summary judgment.

B.

Lasko also argues that the District Court erred by granting summary judgment on his Eighth Amendment deliberate indifference claim and his First Amendment retaliation claim, and by dismissing the individual defendants not involved in his medical treatment. Lasko contends that the District Court improperly weighed evidence, made credibility determinations, and drew inferences in favor of defendants.

The District Court dismissed the deliberate indifference claim because Lasko failed to present evidence from which a reasonable jury could conclude that any Defendant possessed the culpable mental state required for such a claim. The standard for evaluating a prisoner's deliberate indifference claim is highly deferential to the medical practitioners' professional judgment. "Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment.'" Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). A prisoner does not have the right "to choose a specific form of medical treatment." Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000). Lasko's deliberate

14

indifference claim hinges on the premise that defendants refused to treat him for hepatitis C for eighteen months after he arrived at FCI-Schuylkill. As the District Court pointed out, however, Lasko's medical treatment, including extensive evaluations assessing the appropriate course of treatment for his hepatitis C condition, commenced immediately upon entering the facility. Defendants did not approve Lasko to begin a interferon and ribavirin regimen until he had undergone physical and psychological examinations, extensive laboratory testing, and several counseling sessions, but this approach is entirely consistent with the BOP Guidelines for hepatitis C treatment. See J.A. 144-46. Lasko has not adduced any evidence that Dr. Hendershot – or any of the other defendants – failed to treat Lasko's chronic hepatitis C condition. The District Court did not err in granting summary judgment on Lasko's Eighth Amendment claim.

The District Court dismissed the First Amendment retaliation claim because Lasko failed to adduce evidence that his filing of grievances and initiation of litigation played any role in the decision to discontinue his medical treatment  To establish a prima facie case of retaliation in violation of the First Amendment, Lasko must show that "1) the conduct in which he was engaged was constitutionally protected; 2) he suffered 'adverse action' at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (citation omitted). In this case, there was no evidence that the decisions to discontinue Lasko's medication or to file incident reports regarding

15

his conduct were influenced in any way by retaliatory motives. Furthermore, even if Lasko were able to state a prima facie case, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser v. Horn, 242 F.3d 330, 334 (3d Cir. 2001). As the District Court recognized, there were compelling penological interests supporting defendants' actions in this case. Under these circumstances, the District Court did not err in granting summary judgment. See Carter, 292 F.3d at 159 (affirming summary judgment based on undisputed evidence supporting defendants' proffered legitimate penological interests).

Lasko's final argument is that the District Court erred by dismissing the defendants who had no responsibility for his medical decisions. Lasko contends that other defendants were aware of his serious medical condition but failed to arrange for adequate treatment. It is undisputed, however, that Lasko received medical treatment for his hepatitis C. The only factual dispute is whether Lasko should have been started on interferon and ribavirin sooner. We agree with the District Court that these non-medical defendants could not have played a role in this decision and were properly dismissed from the case.

V.

For the foregoing reasons, we will affirm the judgment of the District Court.