**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1726
_____

CHERYL A. SLATER,
                              Appellant

v.

SUSQUEHANNA COUNTY; SUSQUEHANNA COUNTY CORRECTIONAL
FACILITY; SUSQUEHANNA COUNTY PRISON BOARD; DONALD STEWART;
WILLIAM BRENNAN; TEAMSTERS LOCAL 229; and JACK MCGRAIL
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 3:07-cv-02304)
District Judge: Honorable A. Richard Caputo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 17, 2011

Before: FUENTES and CHAGARES, Circuit Judges and POGUE, Judge.[1]

(Filed: January 9, 2012)
_____

OPINION
_____

CHAGARES, Circuit Judge.

_____

[1] Honorable Donald C. Pogue, Chief Judge, United States Court of International Trade,
sitting by designation.

Cheryl Slater appeals the District Court's entry of judgment in favor of seven municipal and union officers and entities on her claims of employment discrimination and retaliation. For the reasons that follow, we will affirm.

I.

We write solely for the parties' benefit and recite only the facts essential to our disposition.

Slater has worked as a correctional officer at the Susquehanna County Correctional Facility since 1994. The prison is a subdivision of Susquehanna County and is superintended by the Susquehanna Prison Board. William Brennan and Donald Stewart were wardens at the prison during Slater's employment. Teamsters Local Union 229 is the bargaining representative for correctional officers employed by Susquehanna County. Jack McGrail is the union's business representative.

Two sets of factual circumstances underlie Slater's claims. First, in early 2004, Slater refused to attest to her receipt and understanding of the prison's Policy and Procedure Manual. She believed that prison rules were not properly enforced and therefore refused to provide a signature acknowledging her understanding of the manual. As a consequence, William Brennan, the prison warden at the time, suspended her for three days and referred her to a psychiatrist for evaluation. She eventually signed under protest and wrote a letter to the Prison Board to inform them of the incident and express her disapproval of the lax enforcement of prison rules. Later that year, she was interviewed by an investigator about the death of an inmate in the prison. Brennan was present for at least part of the interview. Slater alleges that Brennan's presence at the

2

interview was related to her letter to the Prison Board, but offers no evidence to support the inference. Second, Slater testified that a group of other correctional officers at the prison — self-titled the "secret sisters" because they gave gifts to each other to boost morale — harassed her by posting postcards of middle-aged women in bathing suits near her work area. She also testified that the group manufactured false accusations about her.

Three episodes preceded Slater's termination on December 1, 2006.[2] In October 2006, Slater permitted an out-of-state police officer to enter the prison intake area without first disarming him or checking his identification. This was a violation of prison security policy, and Slater received a five-day suspension for her actions. The following month, she twice violated policies directed to prisoners' medical care by permitting an inmate to change the bandage of another inmate with a contagious infectious disease and by improperly disposing of contaminated medical gloves.

Slater initiated this action in the District Court for the Middle District of Pennsylvania on December 21, 2007. Against all defendants, the complaint asserted federal claims of (1) retaliation for exercising First Amendment speech rights, brought pursuant to 42 U.S.C. § 1983; (2) conspiracy to retaliate for exercising First Amendment speech rights, brought pursuant to 42 U.S.C. § 1985(3); (3) age-based discrimination, retaliation, and creation of a hostile work environment under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a)(1), (c)(3); and (4) gender-based discrimination, retaliation, and creation of a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), (c)(3). The complaint also

---

[2] Slater was 57 years old when the prison terminated her employment.

3

alleged state law claims of conspiracy, intentional infliction of emotional distress, wrongful discharge, and discrimination under the Pennsylvania Human Relations Act.

In three memoranda and orders issued in July 2008, March 2009, and February 2011, the District Court granted the defendants' motions to dismiss and motions for summary judgment on all claims. Slater filed this timely appeal.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's orders granting a motion to dismiss, Grier v. Klem, 591 F.3d 672, 676 (3d Cir. 2010), and summary judgment, Gonzalez v. AMR, 549 F.3d 219, 223 (3d Cir. 2008). In so doing, we apply the standard that the District Court was obliged to apply. On review of the grant of a motion to dismiss, "we accept as true all well-pled factual allegations . . . and all reasonable inferences that can be drawn from them." Fellner v. Tri-Union Seafoods, L.L.C., 539 F.3d 237, 242 (3d Cir. 2008). Summary judgment is appropriate only where there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, a court "must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences therefrom in that party's favor." N.J. Transit Corp. v. Harsco Corp., 497 F.3d 323, 326 (3d Cir. 2007).

## III.

Slater appeals the District Court's dismissal or entry of summary judgment on the § 1983 claim for retaliation for engaging in protected speech, the § 1985 claim for

conspiracy to retaliate, the discriminatory discharge claim under the ADEA, and the gender- and age-based hostile work environment claims under Title VII and the ADEA.

A.

Slater first contests the entry of judgment for the defendants on her claim, brought pursuant to 42 U.S.C. § 1983, that she endured retaliation for engaging in speech protected by the First Amendment. She maintains that because she wrote to the Prison Board on a matter of public concern, the defendants willfully conspired to send her to a psychiatrist, impose a suspension on her, manufacture false accusations about her, and arrange for termination of her employment.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). To state a claim of retaliation for engaging in protected expression, a public employee must show that her expressive activity is covered by the First Amendment and that it substantially influenced the alleged retaliatory action. Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). The District Court granted judgment for the defendants on Slater's claim because her letter to the Prison Board was not protected by the First Amendment.

A public employee's speech is protected by the First Amendment when she speaks as a citizen about a matter of public concern. Borough of Duryea v. Guarnieri, 564 U.S. —, 131 S. Ct. 2488, 2493 (2011) (citing Connick v. Myers, 461 U.S. 138, 147 (1983)). Slater contends that the criticism of the lax enforcement of prison rules contained within her letter to the Prison Board was a matter of public concern. The argument is dubious

5

insofar as the letter only alleges, non-specifically, that many of the rules in the Policy and Procedure Manual went unenforced. Appendix ("App.") 681. But even if Slater's conclusory critiques of the prison's general noncompliance with its rules addresses a matter of public concern, there is no dispute that the letter was written in Slater's capacity as an employee, not as a citizen. The letter — sent privately "in response" to Slater's suspension and in order to "set the record straight" — is concerned with a particular personnel action. Id. It does not advance values safeguarded by the First Amendment by promoting public discourse or expressing an informed opinion in a public forum, but rather involves a matter of "personal interest." Connick, 461 U.S. at 144-45. Slater's speech, therefore, is not protected by the First Amendment, and the District Court correctly entered judgment for the defendants on her § 1983 claim.

B.

Slater next contends that the District Court erred in dismissing her claim of conspiracy to retaliate for engaging in protected speech, brought under 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983). The second component of the test requires the plaintiff to allege that the conspiracy was motivated by racial, gender, or other class-based discriminatory animus. Farber v. City of Paterson,

6

440 F.3d 131, 135 (3d Cir. 2006); see also Novotny v. Great Am. Fed. Sav. & Loan Ass'n, 584 F.2d 1235, 1242-44 (3d Cir. 1978), overruled on other grounds, 442 U.S. 366 (1979) (holding that conspiracies motivated by gender-based animus are actionable under § 1985). The District Court dismissed Slater's § 1985 claim on the basis that she failed to allege that the defendants conspired to retaliate against her because of her gender. This conclusion is sound. The complaint alleges that the defendants wished to retaliate against Slater because of her whistle-blowing activities, not because of her membership in a class protected by the statute. Dismissal of the § 1985 claim was proper.

## C.

Slater next contests the District Court's entry of summary judgment in favor of the defendants on her claim that she was terminated because of her age. The ADEA makes it unlawful for an employer to "discharge any individual . . . because of such individual's age" and for a union to "cause or attempt to cause an employer to discriminate against an individual" because of her age. 29 U.S.C. § 623(a)(1), (c)(3). As Slater lacks direct evidence of intentional age discrimination, we evaluate her ADEA claim under the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009). This framework places upon the plaintiff the initial burden of establishing a prima facie case of discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse

7

employment action.  Id.  To prevail, the plaintiff must prove, by a preponderance of the evidence, that the defendant's legitimate reason was in fact pretext for discrimination.  Id.

Slater established a prima facie case of age discrimination by demonstrating that she was over 40, was qualified to serve as a correctional officer, suffered an adverse employment action, and was replaced by an employee sufficiently young enough to support an inference of age-based discriminatory animus.  See Smith, 589 F.3d at 689 (setting forth the elements of a prima facie case of age discrimination under the ADEA).[3] The defendants satisfied their burden by proffering evidence that Slater was terminated for permitting an armed individual into the prison intake area and by twice violating prison policies governing the medical care of prisoners.

Slater's claim falters for lack of evidence that these legitimate, nondiscriminatory reasons were pretext for age discrimination.  To defeat summary judgment, Slater was required either to adduce evidence of discrimination or discredit the reasons proffered for her termination.  Fasold v. Justice, 409 F.3d 178, 185 (3d Cir. 2005).  She introduced no evidence that she was fired because of her age.  Rather, she endeavored to cast doubt upon the justifications for her discharge by denying that she was responsible for the entry of an armed police officer into the prison and by insisting that she properly disposed of the contaminated medical gloves.  But to discredit the basis for her discharge, she "cannot

---

[3] Slater stated in an affidavit submitted in opposition to summary judgment that she was replaced by a 38-year-old employee.  App. 725.  The District Court did not acknowledge the statement, but we assume that it satisfied the fourth component of a prima facie case of age discrimination.  See Smith, 589 F.3d at 689.  On appeal, Slater argues only that she established a prima facie case of age discrimination; she does not dispute the District Court's conclusion that she failed to establish pretext.

simply show that the employer's decision was wrong or mistaken." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). Rather, she must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence . . . and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Id. (citations omitted). In light of profuse testimony by her coworkers and supervisors that she did, in fact, permit an armed trooper to enter the prison and improperly dispose of used medical gloves, Slater failed to surmount this "difficult burden." Id. A reasonable jury could not conclude, from Slater's testimony alone, that the defendants' legitimate reasons were implausible, inconsistent, incoherent, contradictory, or otherwise a pretext for discharging her because of her age.

D.

Finally, Slater contends that the District Court erred in concluding that she was not subjected to a hostile work environment because of her gender and age. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] . . . terms, conditions, or privileges of employment, because of such individual's . . . sex" and for a union to "to cause or attempt to cause an employer to discriminate against an individual" because of her gender. 42 U.S.C. § 2000e-2(a)(1), (c)(3). Hostile work environment claims based on allegations of sexual harassment fall within the ambit of Title VII's proscriptions on workplace discrimination. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). "[W]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

9

conditions of the victim's employment and create an abusive working environment, Title VII is violated." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (quoting Harris, 510 U.S. at 21) (quotation marks omitted). We assume, without deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination, analyzed under the same standards as a Title VII hostile work environment claim. See Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999); Crawford v. Medina Gen. Hosp., 96 F.3d 830, 834 (6th Cir. 1996).

The District Court concluded that the paucity of evidence of workplace intimidation or ridicule foreclosed trial on the claims. We agree. There is insufficient evidence of gender- or age-based harassment severe or pervasive enough to create an abusive working environment. What Slater has proffered is not the stuff of hostile work environment claims. The District Court's grant of summary judgment was proper.[4]

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[4] The District Court granted summary judgment to the union on the basis that Slater did not file a grievance with the union and proceed to arbitration in compliance with the procedures set forth in the collective bargaining agreement. It granted summary judgment to McGrail on the basis that Title VII does not impose liability on individuals. Because Slater's hostile work environment claim fails on the merits, we need not address these alternative, non-jurisdictional bases for summary judgment.